## Price v. A. D. Price Memorial Hospital.

Nov. 21, 1941.

F. Douglass Curry for appellant.

C. E. Rankin for appellee.

Opinion of the Court by Chief Justice Rees—Affirming.

The appellee, A. D. Price Memorial Hospital, is a corporation organized in 1913 for the purpose of operating a hospital in Harrodsburg, Kentucky. In January, 1941, the board of directors of the corporation undertook to amend its charter. They proceeded in the manner prescribed by Article 8, Chapter 32, of the Kentucky Statutes, on the theory that appellee is a charitable corporation organized and operating under the Statutes governing religious, charitable, and educational institutions. Thereafter appellant, Frances N. Price, one of the original contributors to the hospital, brought an action in the Mercer circuit court for a declaration of the rights of the plaintiff and the corporation. The original articles of incorporation were made part of and filed with the petition, and it was alleged that they vested in plaintiff and the other contributors to the hospital rights of which they could not be deprived without their consent, and that the board of directors were without authority to amend the charter so as to deprive them of such rights. The defendant filed an answer and counterclaim and an amended answer and counterclaim in which the history of the hospital was set out at length. The case was submitted on the pleadings, and the court adjudged that the A. D. Price Memorial Hospital is a purely charitable corporation legally organized under the laws of Kentucky; that its board of directors had authority to adopt the amendments to its charter of which plaintiff complains; and that plaintiff has no rights of any kind against the corporation on account of any contribution made by her to it nor on account of any receipt or obligation issued to her for any contribution. The principal contention centers about the nature of the corporation organized in 1913, and whether it comes under the provisions of sections 879 to 883, inclusive, of the Kentucky Statutes.

Prior to 1913 no hospital was operated in Mercer county, and a number of public spirited citizens in Harrodsburg and Mercer county conceived the idea of raising funds for the purpose of providing hospital facilities for the sick of that community. The initial contributions amounted to approximately $3,000. Nine of the contributors associated themselves together for the purpose of organizing a hospital, and formed a corporation by

signing articles of incorporation which were filed in the office of the Secretary of State and recorded in the clerk's office of Mercer county. At first the hospital was conducted in a rented building. Additional contributions were made from time to time, and eventually a lot was purchased and a hospital building was constructed. In 1935 the sum of $9,500 was raised by public subscriptions for the purpose of remodeling the buildings and procuring additional equipment. The corporation has received numerous bequests and donations, and the plant now represents an investment of many thousands of dollars. In 1940 certain provisions of the articles of incorporation filed February 27, 1913, were brought to the attention of the board of directors, and the question was raised as to whether appellee was a purely charitable corporation and qualified under the United States Treasury regulations to receive gifts which were allowable as deductions against income or estate taxes. By reason of the publicity given to the dispute, a number of prospective donations were lost. The board of directors, pursuant to the provisions of Section 882 of the Kentucky Statutes, amended the charter so as to remove all doubt as to the charitable character of the corporation, and this litigation followed.

Undoubtedly, the original contributors who signed the articles of incorporation intended to organize a corporation under Article 8, Chapter 32, of the Kentucky Statutes, relating to charitable institutions. The preamble to the articles of incorporation reads: "Be it remembered that undersigned have associated themselves together for the purpose of establishing a Charitable Institution having no Capital Stock." Article 1 specified the name of the association and its place of operation. Article 2 reads: "The objects of the association shall be to provide a Convenient and Sanitary place for the care and nursing of the sick, for the treatment of disease and for surgical operations and for giving such attention and doing such things as are incident to the conduct of a well regulated Hospital." Article 3 provided that the affairs of the association should be conducted by a board of directors consisting of twenty-four, twelve of whom were to be chosen by the Woman's Club of Harrodsburg, one by the physicians of Harrodsburg, one by the board of council of Harrodsburg, one by the fiscal court of Mercer county, and nine were

to be business men to be chosen by the contributors to the hospital fund. Article 3 concludes: "In voting for such representative each person who has contributed as much as $10.00 will be allowed one vote, if as much as $25.00 two votes, as much as $50.00 three votes, as much as $100.00 four votes and one additional vote for each additional $100.00 contributed, such contribution to be evidenced by the receipt executed by the proper officer." Article 4 prescribes the manner of electing officers. Article 5 is the real bone of contention and reads:

"In the event that said association shall decide to dissolve, and cease its operation, any property belonging to the association shall go back to the original contributors to the said Hospital or to their representatives or assigns in the proportion of their respective gifts, as shall be evidenced by receipts to be issued by the proper authorities. Said association shall be authorized to receive gifts of money, personal property, or real estate and receipts therefor shall be issued for the true value thereof, as shall be determined by by-laws. If at any time Sixty per cent of the amount certified to said association, as evidenced by the receipts issued as aforesaid, shall be voted by the owners of said receipts for dissolution and winding up the affairs of said association then it shall cease and liquidate its assets and distribute the net asset as aforesaid."

The amended articles of incorporation, recorded in the county clerk's office of Mercer county on January 16, 1941, and filed with the Secretary of State on January 24, 1941, were signed by twenty-two of the twenty-four directors. By the amended articles the number of directors was reduced from twenty-four to nine, and it was provided that election of the directors should be by co-optation instead of by the contributors, civic organizations, and municipal bodies. Article 5 was amended so as to eliminate the provision for the dissolution of the corporation by vote of the contributors, and it was provided that no receipt or other obligation should ever be given or issued to any person who had theretofore contributed or might thereafter contribute funds or property to the association, and any that may have been issued theretofore were canceled. The amendment to article 5 concludes with these provisions:

"This association shall continue to exist as a charitable corporation. No pecuniary benefit or profit shall be derived from it by any person. All of its property, and all its earnings and income, in excess of the actual cost of operation and maintenance shall be devoted exclusively to the improvement of the hospital, its equipment, the enlargement and betterment thereof, and to providing for the relief of the indigent sick."

The record discloses that certificates or receipts as provided for in Article 5 of the original articles of incorporation were issued to the original contributors, who contributed about $3,000, but after the hospital began its operations very few were issued and after 1915 no receipts were issued. Obviously the purpose of Article 5 of the original charter was to protect the contributors in the event the hospital was not successful in its initial stages. It will be assumed that the contributors did not intend to be Indian givers. After the hospital became established and it was known that it was a successful and going concern, there was no thought apparently on the part of those in charge or of the contributors that a return of the donations would ever be made. But be that as it may, we think the contributors are without standing to challenge the charitable nature of the appellee or the action of its directors in amending its charter. Whether the apparent strictures which the original incorporators attempted to place in the charter were valid or enforceable need not be determined. The corporation was organized as a charitable institution without capital stock for charitable purposes, and in the manner prescribed by Section 879 of the Kentucky Statutes. Section 882 of the Statutes, which is a part of the article governing charitable institutions, prescribes the manner of amending charters of charitable corporations. It provides that such corporations may, by the consent of two-thirds of the directors, amend their charters by filing and recording the amendments in the manner provided in Section 879 for filing and recording original articles. The original incorporators adopted the charter with the knowledge that it could be amended at any time by the consent of two-thirds of the directors, and, under these circumstances, it cannot be said that the original contributors and incorporators have been deprived of any vested right. Signers of the original articles of in-

corporation in legal effect agree that they may thereafter be amended in conformity with law. Williams v. Nall, 108 Ky. 21, 55 S. W. 706. In 13 Am. Jur., Corporations, Section 90, it is said:

> "After the Dartmouth College Case which established the contractual nature of corporate charters, the general practice arose, following the suggestion of Justice Story in his concurring opinion in that case, on the part of the several states in the grant of corporate charters to reserve the right to alter, amend, or repeal the charter. It is now settled that such a reservation is not repugnant to the grant, but is a valid limitation on the powers and privileges granted. Charters granted by Congress may likewise be conferred subject to such reserved right of alteration, amendment, and repeal. Corporations are the creations of the state, endowed with such faculties as the state bestows and subject to such conditions as the state imposes; and if the power to modify their charters is reserved, that reservation is a part of the contract, and no change within the legitimate exercise of the power, whether directly or by an independent general regulation, can be said to impair its obligation. If the power to alter, amend, or repeal a corporate charter is an unlimited and unconditional one, the legislature may exercise that power untrammeled by judicial interference."

By the provisions of the Statutes under which the hospital was incorporated, its charter was subject to alteration by its board of directors. The amendments adopted did not accomplish fundamental or radical changes in the original purposes for which the corporation was organized, but merely confirmed and clarified those purposes and provided for a more efficient administration of its affairs by reducing the number of directors and changing the manner of selecting them. The changes made by the amendments were necessary in order to effectuate the very purposes for which the corporation was organized.

We think the circuit court correctly adjudged the rights of the parties, and the judgment is affirmed.